# Kramer, Appellant, v. Hamsher.

*Corporations—Stock subscription—Suit by receiver—Affidavit of defense—Conditional subscription.*

In an action by the receiver of a farmers' produce company to recover on a stock subscription, an affidavit of defense is insufficient which sets up a parol agreement with the company to the effect that all milk furnished to it by the defendant should be paid for at the rate of twenty cents per gallon, and that the company failed to purchase and to pay twenty cents per gallon therefor, without any averment that the company refused to purchase milk offered, or that it purchased milk elsewhere to the detriment of the defendant.

Such an agreement also lacks the essentials of a valid contract inasmuch as it is unlimited as to the time of performance and the quantity of the article to be purchased. It is also a secret parol agreement in violation of the rights of creditors as well as co-subscribers who had a right to rely on the subscription contract as written.

The order of the court wherein the receiver is appointed is conclusive upon the validity and the amount of the assessment, though it does not touch any defenses that might be made to it.

Where the statement of claim avers that all of the stock was subscribed for, and sets out fully the facts relating to the subscriptions, an affidavit of defense is insufficient which avers that all of the stock was not subscribed for by bona fide subscribers, without showing what subscriptions were fraudulent.

It is immaterial that the affidavit of defense states that the defendant repudiated the subscription contract when he became aware of the failure of the company to comply with its oral agreement, without any allegation as to whom this repudiation was made, or that it was assented to by the company. If the repudiation was not made until after the incorporation, it was too late because it prejudiced the intervening rights of creditors and other stockholders.

Argued March 13, 1916. Appeal, No. 12, March T., 1916, by plaintiff, from order of C. P. Cumberland Co., Feb. T., 1915, No. 40, discharging rule for judgment for want of a sufficient affidavit of defense in case of Calvin A. Kramer, et al., Receivers of the Farmers' Produce

Company, v. D. M. Hamsher. Before ORLADY, P. J., HENDERSON, KEPHART, TREXLER and WILLIAMS, JJ. Reversed.

Rule for judgment for want of a sufficient affidavit of defense.

The statement of plaintiffs set forth that the defendant, on the 25th day of November, 1911, signed a certain paper, as follows:

"Whereas certain citizens of Harrisburg and vicinity are forming a company to be chartered under the laws of Pennsylvania as the Farmers' Produce Company. Said company to be located in, or in the vicinity of, Harrisburg, Pa. That the capital stock of said company is to be $30,000.00 and shall consist of 300 shares of $100.00 each:

In pursuance of the above, I, D. M. Hamsher, do therefore agree to subscribe for one share of stock, at rate of $100.00 per share.

And I further agree to pay for the shares so subscribed in the following manner, to wit, one-tenth of the amount so subscribed to be paid when the charter for said company is obtained, ten dollars to be paid each 30 days thereafter until full amount of subscribed stock be paid.

"Witness our hand and seal this 25th day of Nov., A. D. 1911.

"(Signed) D. M. HAMSHER. (Seal.)"

That the said Farmers' Produce Company was organized on December 7, 1911, with a capital stock of $30,000.00 consisting of 300 shares of $100 each, all of which had been subscribed, and letters patent were granted to it, which were recorded in Dauphin County on December 23, 1911.

That on February 11, 1913, the plaintiffs were appointed receivers of said company, and that the Court of Dauphin County, on petition of the receivers, on September 21, 1914, ordered and decreed an assessment to be levied upon the stockholders whose subscriptions re-

mained unpaid; that demand has been made upon the defendant, who had failed to pay his subscription, and that he has refused to make payment. There is attached a statement that "according to the books of the company, the following residents of Dauphin and Cumberland Counties signed and delivered subscriptions for stock in the form above mentioned to the officers of said company, and the number of shares subscribed for, with the amount paid and the balance due are noted." Then follows the names of thirty persons, subscribers altogether for 36 shares. By which it appears that $3,085.00 is unpaid on the subscriptions. By this it appears that the defendant has never paid anything.

The affidavit of defense filed denied that any demand was made upon the defendant by the company for payment before the receivership; that while he did sign a paper subscribing for one share of stock, he does not admit that the copy filed by plaintiffs is a correct one, and calls for proof of the same.

That his subscription was conditional, being secured from him under the promise and agreement that as a subscriber, he would be paid by the company twenty cents per gallon for his milk, and that it, the said company, failed to do this, as agreed upon, and at no time paid the said sum of 20 cents per gallon. That the subscription made by him should not be in force and effect unless 300 shares of the par value of $100.00 each were subscribed by bona fide subscribers, and he avers that the said 300 shares were at no time subscribed by bona fide subscribers.

That this first became apparent to him at a meeting of the company in December, and he then promptly repudiated his subscription, and refused to pay the same, as it, and the other conditions had not been complied with.

He also averred that no creditor became such as the result of his subscription; that no outstanding indebtedness of the company was incurred on the faith of his subscription; that the assets of the company have been sold

and distributed among the creditors of the company, and the receipts of said creditors taken in full satisfaction of their respective claims; and further averring that he owes to the plaintiffs no sum whatsoever.

The court discharged the rule for judgment for want of a sufficient affidavit of defense.

*Error assigned* was the order of the court.

*George L. Reed,* with him *Wm. H. Earnest,* for appellant.—It is too late to aver that the subscription was induced by fraudulent misrepresentation: Dettra v. Kestner, 147 Pa. 566; Howard v. Turner, 155 Pa. 349.

The affidavit of defense contains no averment sufficient to relieve defendant of liability upon his stock subscription by reason of any attempted cancellation or withdrawal: Garrett v. Dillsburg, Etc., Railroad Co., 78 Pa. 465; Auburn Bolt Works v. Shultz, 143 Pa. 256; Muncy Traction Engine Co. v. De La Green, 143 Pa. 269; Jeanette Bottle Works v. Schall, 13 Pa. Superior Ct. 96; Graff v. Pittsburgh and Steubenville R. R. Co., 31 Pa. 489; Braddock Electric Railway Co. v. Bily, 11 Pa. Superior Ct. 144; Altoona Milk Co. v. Armstrong, 38 Pa. Superior Ct. 350; Harvey v. Weitzenkorn, 232 Pa. 447.

The various specific averments contained in the affidavit of defense are wholly insufficient: Graff v. Pittsburgh, Etc., Railroad Company, 31 Pa. 489; Philadelphia, Etc., Railroad Co. v. Conway, 177 Pa. 364; Miller v. Hanover, Etc., Railroad Co., 87 Pa. 95; Marles Moulding Co. v. Stulb, 215 Pa. 91; Altoona Milk Co. v. Armstrong, 38 Pa. Superior Ct. 350; Keystone, Etc., Machine Co. v. Bromeier, 42 Pa. Superior Ct. 384; Donaldson v. Rabenhold, 23 Dist. Rep. 795; Garrett v. Auburn R. R. Co., 78 Pa. 465; Capital City, Etc., Fire Ins. Co. v. Boggs, 172 Pa. 91; French v. Harding, 235 Pa. 79; Van Dyke v. Baker, 214 Pa. 168.

*Joseph P. McKeehan,* with him *Herman Berg, Jr.,* for appellee, cited: Spellier Elec. Time Co. v. Leedom, 149 Pa. 185; Chicago B. & Mfg. Co. v. Browning, 19 Pa. Superior Ct. 355; Jeanette Bottle Works v. Schall, 13 Pa. Superior Ct. 96; Donaldson v. Rabenhold, 23 Dist. Rep. 798; Philadelphia Med. Pub. Co. v. Wolfenden, 248 Pa. 450.

OPINION BY KEPHART, J., May 8, 1916:

The appellee was a subscriber to one share of stock in the Farmers' Produce Company. The subscription agreement stated that the capital stock of the company was to be $30,000.00, and consist of three hundred shares of $100.00 each. From the statement it appears that of this capital some $26,000.00 was paid in in cash, leaving a balance unpaid, of which the defendant's subscription was a part, and that because of insolvency receivers had been appointed to wind up its affairs; all the assets of the company had been reduced to cash and distributed, leaving a balance due creditors of approximately $2,000.00. The statement avers that all of the stock had been subscribed, and the Court of Common Pleas of Dauphin County granted an order directing an assessment to be levied against those stockholders who had not paid their subscriptions in full.

The defendant sets up a parol agreement with the company to the effect that all milk furnished to it by the defendant should be paid for at the rate of twenty cents per gallon, and that the company failed to purchase and to pay twenty cents per gallon therefor. The averment does not state that the company refused to purchase milk offered, or that it purchased milk elsewhere to the detriment of the defendant. Apart from the insufficiency of the averment, it cannot be sustained as a defense to the subscription agreement. As a condition precedent, the supposed agreement lacks the essentials of a valid agreement. It is unlimited as to the time of performance and the quantity of the article to be purchased. It is impos-

sible of performance.   To attempt to comply with it
would make it impossible to bring about the status neces-
sary to all conditions precedent that there must be some-
time when a condition may be said to be complied with
and the subscription be absolute or the condition fail;
but in this case, though the corporation might, for a cer-
tain time, purchase and pay for milk as here stipulated,
that would not satisfy the condition of the subscription;
it requires the company at all times to purchase and pay
for the milk|| Further, its effect was to establish a secret
parol agreement in violation of the rights of creditors as
well as cosubscribers who had a right to rely on the sub-
scription contract as written.   The condition should be
treated in the same light as if made after incorporation
or as no condition at all.   A contract to take and pay for
stock in a corporation, made in consequence of fraudu-
lent representations, is voidable and not void and can
only be avoided subject to the rights of creditors where
there is a winding up order or voluntary winding up.   In
such case the intervening rights of creditors and the
stockholders call for prompt action on the part of the
subscriber who seeks to avoid his liability on the ground
of fraud: Howard, Receiver, v. Turner, 155 Pa. 349.   The
allegation that there was no outstanding indebtedness
incurred on the faith of the appellee's subscription and
that the receipts were taken in full from creditors does
not present the precise question.   There were other inter-
vening equities as appears by the order of the court of
Dauphin County and the plaintiffs' statement filed.   It
there appears that in addition to debts, stock subscrip-
tions were paid on a large amount of stock.   The appel-
lants do not allege that there were no intervening equi-
ties.   This is a substantial element of the case, and when
averred the burden of proof is thrown to the plaintiff to
establish intervening equities: Van Dyke v. Baker, 214
Pa. 168.   These equities are not limited merely to those
to whom money is owed as a creditor but reaches out to
stockholders who have in good faith paid their subscrip-

tions, as well as the officers of the company who are liquidating its affairs: Van Dyke v. Baker, supra. Furthermore, the order of the court of Dauphin County is conclusive upon the validity and the amount of the assessment, though it does not touch any defenses on individual grounds that might be made to it: Capital City, Etc., Fire Ins. Co. v. Boggs, 172 Pa. 91; French v. Harding, 235 Pa. 79; Philadelphia & Gulf Co. v. Clark, 59 Pa. Superior Ct. 415. And this allegation as to creditors is not an individual defense; it is a finding common to all creditors. The affidavit in all these particulars was insufficient.

The affidavit further states that the subscription contract "should not be in force......unless 300 shares of the par value of.$100.00 each were subscribed by bona fide subscribers; and the defendant avers that the said 300 shares were at no time subscribed by bona fide subscribers.......whereupon the said defendant declined to make any payments on account of the said subscription." If the subscription was dependent upon an oral agreement, its effect must be to contradict or vary the terms of a writing which is clear and definite in its terms. Parol or secret agreements, varying the terms of a written subscription, absolute on its face, in the absence of fraud, are void and the subscription is valid and binding. To make a subscription conditional the condition must not only be in writing but must be a part of the subscription itself: 1 Thompson 633. It is not necessary for us to discuss the question as to there being an implied condition, that the capital stock must be fully subscribed, which condition is attached to all stock subscriptions arising from the very nature of the subject-matter under consideration, and uncomplied with relieves the stockholder from liability. Assuming that such condition exists with respect to corporations organized under the laws of this State, to the full amount of the capital stock (but we do not so decide), where a subscriber to the capital stock of a proposed corpora-

tion, after the articles of association are duly filed, evidencing incorporation, permits, without protest, the corporation to become organized into a going concern, to engage for a long time in the corporate business, wherein the rights of creditors have intervened,. and makes no protest to the company of any failure to comply with the condition upon which his subscription was based, such subscriber waives whatever right he has to insist on the condition being complied with and is liable on his subscription as though such condition had not existed.  He is required to be diligent and ascertain his rights and not sit quietly by and see other persons expend their money without giving notice of his intention to act.  This subscriber, by his acts, is brought within this rule.  But there is a positive averment that the stock was all subscribed.  A list of some thirty names is set forth in the plaintiffs' statement showing unpaid subscriptions; notes apparently good are taken for a portion of the subscription.  In no specific instance does the appellee point out where the corporation failed to comply with the condition contended for by him.  When the appellants presented to him the facts, as full as are here presented, it was incumbent on the appellee to indicate what subscriptions were fraudulent.  In this respect we feel that the affidavit is not full and complete.

The appellee states in his affidavit that he repudiated the subscription contract when he became aware of the failure of the company to comply with its oral agreement, as well as the other "breaches of the contract hereinafter set forth."  But there is no allegation to whom this repudiation was made or that it was assented to by the company.  And as it was made long after the incorporation of the company, when the rights of creditors had intervened, and when the acts of the defendant were tantamount to a waiver of his rights, the averment of withdrawal of subscription was entirely insufficient and had it been all that an affidavit should contain for the reasons here set forth, it would not have availed the

defendant. The appellee, before the articles of association were filed in the secretary of the Commonwealth's office, might have withdrawn from the subscription agreement. After incorporation, the corporation further would not have the right to accept this cancellation to the prejudice of other stockholders or creditors: Altoona Milk Co. v. Armstrong, 38 Pa. Superior Ct. 350.

We are of the opinion that the rule for judgment should have been made absolute. The assignments of error are sustained, and it is now ordered that judgment be entered for the plaintiffs by the court below unless other legal and equitable grounds be shown to the contrary.